**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**COMMUNICATIONS SYSTEMS, INC.**,

      Plaintiff,

vs.                            **MEMORANDUM OPINION AND ORDER**
                                    Civil File No. 06-2831 (MJD/SRN)

**BRADLEY KOSTELNIK**,

      Defendant.

---

J. Thomas Vitt and Bart B. Torvik, Dorsey and Whitney LLP, Counsel for Plaintiff

Anthony J. Kane and Megan D. Hafner, Terhaar, Archibald, Pfefferle & Griebel, LLP, and Michael S. Sherrill and Kathryn K. Smith, Sherrill Law Office, Counsel for Defendants

---

**I.    INTRODUCTION**

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment of Noninfringement [Docket No. 32]. On October 4, 2007, Defendant filed a brief in opposition to Plaintiff's motion [Docket No. 43]. Plaintiff, in turn, filed its reply brief on October 11, 2007. [Docket No. 46]. The Court heard oral argument regarding this matter on October 24, 2007, at 9 A.M.

## II.   BACKGROUND

### A.   The Parties

Plaintiff, Communication Systems, Inc. ("CSI"), is a Minnesota corporation located in Hector, Minnesota.  Defendant Kostelnik is a Minnesota resident and an inventor who resides in North Saint Paul, Minnesota.  On January 3, 2006, Kostelnik was granted U.S. Patent No. 6,981,892 (" '892 patent") disclosing a combination telephone and cable service jack interface.

### B.   The Patent

The '892 patent discloses "a mechanism for selectively toggling a telephony jack connection between a telephony service provider and a cable service provider."  ('223 Pat., Abstract.)  The device has two "female" jack connections: (1) a port that connects to telephone service from the cable company; and (2) a port that connects to telephone service from the telephone company.  The device uses a jumper cable mechanism to allow a user to toggle telephone service between the cable and telephone companies by plugging in or removing the jumper cable from the second port.  Thus, to obtain telephone service from the telephone company, the user simply connects the jumper cable to the second port.  To obtain telephone service from the cable company, the jumper cable must be disconnected from the second port.

**1.     The Claims and the Specification**

Claim 1, the sole independent claim of the '892 patent, states:

1. A combination phone and cable jack interface, said interface comprising:

> a base member having a substantially planar rear portion and a plurality of sidewalls integral therewith and extending orthogonally therefrom, said base member defining a cavity therein;
>
> a faceplate having substantially planar front and rear portions, said faceplate further having a perimeter equal to a perimeter of said base member for enclosing said cavity, said faceplate further having a plurality of apertures formed therein for receiving fastening members therethrough so that said faceplate can be removably secured to said base member; and
>
> means for selectively toggling a telephony jack connection between a telephony service provider and a cable service provider so that a user can obtain telephony service from either service provider without needing to remove said jack from a wall outlet and internally rewiring the telephony jack connection, said toggling means comprising
>
>> a first port electrically coupled to a cable service provider network, said first port for interfacing an external telephony line with the cable network,
>>
>> a second port electrically coupled to a telephony service provider network, said second port for interfacing an external telephony line with a telephony network, and
>>
>> a jumper cable electrically coupled to said first port and being removably connectable to said second port wherein the external telephony line received telecommunication signals from the telephony network when said jumper cable is electrically coupled to said second port and received telecommunication signals from the cable network when said jumper cable is removed from said second port.

('892 Pat., Col. 4:13-47.) Claims 2 and 3, which disclose further limitations regarding the jumper cable, are dependent on Claim 1 and incorporate its limitations.

The '892 patent's specification is brief and outlines the combination telephone and cable service jack interface described above. As background for the invention, the patentee points out that telephone service is now available from local telephone companies or cable service providers. Because the wiring for each type of signal is distinct, phone jack connections must be rewired to accommodate a new provider whenever a resident switches from a telephone to a cable service provider. Therefore, the patentee identifies a need "for an easy to use combination telephony and cable jack interface so that a user can convert from one service provider to another" without continually rewiring existing phone jack outlets. ('892 Pat., Col. 1:55-58). The invention's sole preferred embodiment is depicted in Figures 1 and 2 for '892 patent.

### 2. The Prosecution History and the Prior Art

When originally submitted to the PTO, the '892 patent disclosed nine claims: three independent (1, 5, and 8) and six dependent (2, 3, 4, 6, 7 and 9) claims. For the purposes of resolving this motion, it is only necessary to recite the original versions of Claims 1 and 2:

1.  A combination phone and cable jack interface, said interface comprising:

a base member having a substantially planar rear portion and a plurality of sidewalls integral therewith and extending orthogonally therefrom, said base member defining a cavity therein;

a faceplate having substantially planar front and rear portions, said faceplate further having a perimeter equal to a perimeter of said base member for enclosing said cavity, said faceplate further having a plurality of apertures formed therein for receiving fastening members therethrough so that said faceplate can be removably secured to said base member; and

means for selectively toggling a telephony jack connection between a telephony service provider and a cable service provider so that a user can obtain telephony service from either service provider without needing to remove said jack from a wall outlet and internally rewiring the telephony jack connection, said toggling means comprising

2.  The interface of claim 1, wherein said toggling means comprises:

a first port electrically coupled to a cable service provider network, said first port for interfacing an external telephony line with the cable network,

a second port electrically coupled to a telephony service provider network, said second port for interfacing an external telephony line with a telephony network, and

a jumper cable electrically coupled to said first port and being removably connectable to said second port wherein the external telephony line received telecommunication signals from the telephony network when said jumper cable is electrically coupled to said second port and received telecommunication signals from the cable network when said jumper cable is removed from said second port.

(U.S. Pat. App. Serial No. 10/855,455; Ex. 2 to Torvik Dec. at 14.)

On March 18, 2005, the Examiner rejected all nine claims of the application.  Application Claim 1 was rejected as anticipated by prior art,

specifically United States Patent No. 6,222,125 (the "Pritchard patent"), pursuant to 35 U.S.C. § 102(b). (March 18, 2005 Office Action, U.S. Pat. App. Serial No. 10/855,455, ¶ 10; Ex. 2 to Torvik Dec. at 32-33.) Application Claim 2 was rejected for failure to comply with the enablement requirement of 35 U.S.C. § 112. (Id. ¶ 8.)

In regard to Application Claim 1's rejection for anticipation, the Examiner noted that the Pritchard patent disclosed a jack interface for receiving telecommunication signals from either cable or telephony networks that included all the elements disclosed by Defendant in Application Claim 1. (Id. ¶ 10.) Specifically, the Examiner noted that:

> it is inherent [in the Pritchard patent] that one jack port can be coupled to the cable network and the other jack port can be coupled to the telephony network such that a user can selectively toggle between the cable network and the telephony network without needing to remove [either jack] from a wall outlet and internally rewiring the telephony jack connection.

(Id.) In regard to Application Claim 2, because "the present specification does not explain fully how many external telephony lines are being used and the drawings do not show the external telephony line engaging the second port," the Examiner was unable to see the purpose of the two separate ports and the jumper cable. (Id. ¶ 8.)

On May 5, 2005, Defendant submitted an amendment in response to the March 18, 2005 Office Action. With respect to Application Claim 1,

6

Defendant attempted to distinguish the Pritchard patent by noting that it allowed toggling between the telephone and cable company lines only in "the room in which it is situated, whereas the present invention allows either cable phone service and telephone service to provided in all rooms without changing the outlets of each room." (May 5, 2005 Amendment, U.S Pat. App. Serial No. 10/855,455, Remarks/Arguments; Ex. 2 to Torvik Dec. at 49-50.) To rescue Claim 2, Defendant argued that it was enabled. According to Defendant, the first port 21, which is electrically connected to all the jacks in a residence, is hard wired to the cable network. (Id.) The second port 24 is hard wired to the telephony network, and when the jumper cable is coupled to the second port 24, telephony network service will then extend to all jacks in the house. (Id.)

In an Office Action dated May 27, 2005, the Examiner rejected Defendants arguments. (May 23, 2007 Office Action, U.S. Pat. App. Serial No. 10/855,455; Ex. 2 to Torvik Dec at 56 et seq.) With respect to Claim 1, the Examiner repeated that Claim 1 was anticipated by Pritchard. (Id. ¶ 6.) With respect to Defendant's argument that his invention differs from the Pritchard patent because it provides either cable phone service or phone company service to all rooms of a residence without changing the outlets in each room, the Examiner agreed that the Pritchard patent did not teach this feature. However, the Examiner found that the applicant's patent

7

application did not teach that feature either.  According to the Examiner, the claims failed to recite a structure that interfaces with all rooms of a residence and the specification did not explain this alleged feature.  With respect to Claim 2, the Examiner objected to it as being dependent on a rejected base claim, but stated it would be patentable "if rewritten in independent form including all of the limitations of the base claim . . . ."  (Id. ¶ 7).

In response to the examiner's final objections, Defendant rewrote Application Claim 2 in independent form to include all of Application Claim 1's limitations (now Claim 1), retained Application Claims 3 and 4 (now Claims 2 and 3), and canceled Application Claims 5 through 9.  (U.S. Pat. App. Serial No. 10/855,455, Ex. 2 to Torvik Dec. at 68.)  The patent application was approved by the examiner as amended, resulting in the issuance of the '892 patent.

### B.     The Alleged Infringements

In May 2006, Plaintiff received a letter from Defendant's attorney notifying Plaintiff that at least two of Plaintiff's dual provider switch jack products potentially infringe the '892 patent.  (Compl. ¶ 16; Ex. A thereto.)  The letter requested that CSI accept a license in exchange for a reasonable royalty.  (Id.)  Defendant extended the offer to license the patent for 60 days from the date of the letter.  (Id.)

Plaintiffs did not respond to the letter, but filed the present action for declaratory judgment of noninfringement and invalidity against Defendant. Defendant counterclaims, alleging that Plaintiff has infringed the '892 patent by manufacturing, importing, offering to sell and/or selling twelve products that are covered by Claim 1 of the patent.  (Amd. Ans. and Countercl. ¶ 3.)  Defendant claims infringement by the doctrine of equivalency.  Plaintiff argues that prosecution history estoppel precludes Defendant's infringement claims.  The Court agrees with Plaintiff for the reasons stated below.

### III.   LEGAL STANDARD

The doctrine of equivalents allows a finding of infringement when an accused product is the substantial equivalent of the patented invention. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 23, 29 (1997).  The doctrine is not applied to the whole of the invention, but to the individual claimed elements.  Id. at 29.  Intent is not considered when applying the doctrine of equivalents.  Id. at 36.  The test for whether an element in the accused product is equivalent to a claimed element is whether the differences between the two are insubstantial to one of ordinary skill in the art.  KCJ Corp. v. Kinetic Concepts, 223 F.3d 1351, 1359 (Fed. Cir. 2000).

A patent owner can be prevented from benefiting from the doctrine of equivalents due to "prosecution history estoppel"—that is, something an applicant gave up or amended during the patent's prosecution to obtain allowance of the patent cannot be recaptured by the doctrine of equivalents. Warner-Jenkinson, 520 U.S. at 30, 41. The Supreme Court has stated:

> When . . . the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent.

Festo Corp. v. Shoketsu, 535 U.S. 722, 733-34 (2002) ("Festo I"). Thus, the first question the Court must address is whether the amendment in question narrowed the claim.

If the amendment is a narrowing amendment, then the Court must undertake a second inquiry. Festo Corp. v. Shoketsu, 344 F.3d 1359, 1366 (Fed. Cir. 2003) ("Festo II"). Because a narrowing amendment made for any reason related to the statutory conditions and requirements for patentability will create prosecution history estoppel as to the amended claim element, Festo I at 736, the Court must determine whether the amendment was substantial and related to patentability. Festo II at 1366-67. If the prosecution history does not provide a reason for the amendment, it is presumed that the amendment was related to

10

patentability and estoppel will apply. Warner-Jenkinson, 520 U.S. at 33, 41. The patent owner must be allowed an opportunity to rebut the Warner-Jenkinson presumption that prosecution history estoppel applies. Sextant Avonique, S.A. v. Analog Devices Inc., 172 F.3d 817, 828 (Fed. Cir. 1999). The burden falls on the patent owner to show another reason for the amendment. Warner-Jenkinson, 520 U.S. at 33. The Court decides, as a matter of law and from the viewpoint of one ordinarily skilled in the art, if the purported reason can overcome prosecution history estoppel. Bai v. L & L Wings Inc., 160 F.3d 1350, 1354 (1998); Warner-Jenkinson, 520 U.S. at 33.

If the patent holder overcomes the Warner-Jenkinson presumption, then the Court moves to a third and final question regarding the "scope of the subject matter surrendered by the narrowing amendment." Festo II, 344 F.3d at 1367. In this respect, the Supreme Court imposed a further presumption "that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation." Festo I, 535 U.S. at 740. There are three ways in which the patentee may overcome the Festo presumption. The patentee must show that: (1) "the alleged equivalent would have been unforeseeable at the time of the narrowing amendment"; (2) "the rationale underlying the narrowing amendment bore no more than a tangential relationship to the equivalent in question"; or (3)

11

another reason suggests that one skilled in the art could not reasonably have been expected to draft a claim literally encompassing the alleged equivalent at the time of the narrowing amendment.  Festo II, 344 F.3d at 1368.

The tangential relation exception to prosecution history estoppel is "very narrow."  Cross Med. Prods. v. Medtronic, 480 F.3d 1335, 1342 (Fed. Cir. 2007).  This inquiry centers on whether "the reason for the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent."  Festo II, 344 F.3d at 1369 (citations omitted).  The Court's focus should be "on the patentee's objectively apparent reason for the narrowing amendment," which the Court must be able to discern from the prosecution history record.  Id.

## IV. DISCUSSION

Defendant alleges that all twelve of CSI's products infringe the '892 patent.  However, none of the accused products include a jumper cable for toggling between cable and phone company service: all of them use a switch to accomplish this instead.  Thus, Defendant argues for infringement using the doctrine of equivalents.  According to Defendant, the switch in each of the accused products is substantially equivalent to the jumper cable recited in his patent.

Without conceding this point, but for the sake of arguing their summary judgment motion, Plaintiffs assume that the switches are substantial equivalents of the required jumper cables. However, Plaintiffs allege that the prosecution history estops Defendant from asserting the doctrine of equivalence. Because the "jumper cable" element of Application Claim 2 was added as part of a narrowing amendment, Plaintiffs argue that Defendant surrendered his infringement claims on any substantially equivalent structures.

Defendant concedes that the Festo presumption of prosecution history estoppel applies, because Claim 2 was amended to avoid prior art. Festo I, 535 U.S. at 735 (citing Warner-Jenkinson, 520 U.S. at 30-32). To overcome Festo's rebuttable presumption, Defendant argues that the rationale underlying the narrowing amendment was no more than tangentially related to the jumper cable claim limitation. Thus, to determine whether the doctrine of equivalents is applicable, the Court must examine whether the rationale underlying Defendant's narrowing amendment was peripheral to the alleged equivalent—here, the switch mechanism.

Defendant's argues that the Pritchard patent does not teach a removable electrical connection between Port 1 and Port 2. Therefore, Defendant claims that the rationale underlying Defendant's narrowing

13

amendment was "to establish the removable electrical connection between the first and second port."  According to Defendant, the jumper cable is simply a specific mechanism for making this electrical connection and is therefore peripheral, or not directly relevant, to the amendment's underlying rationale.  In support of this argument, Defendant relies on the Federal Circuit's opinion <u>Insituform Technologies, Inc. v. Cat Contracting, Inc.</u>, 385 F.3d 1360 (Fed. Cir. 2004).

  The <u>Insituform</u> patent involved a method for repairing damaged underground pipe without removing it from the ground.  The invention uses a cup connected to a vacuum source to draw resin toward a series of windows cut in the impermeable outer layer of a tube liner that is inserted into the pipe while still underground.  As the resin nears each window, the cup and the vacuum source are removed and that window is sealed.  The process is repeated until the entire inner layer of the tube liner is impregnated with resin.  <u>Id.</u> at 1362-63.

  In <u>Insituform</u>, the first four application claims consisted of an independent claim, claim 1, and three dependent claims, claims 2-4.  <u>Id.</u> at 1368-69.  All the claims were rejected by the patent examiner based on anticipation by prior art.  <u>Id.</u> at 1369.  The prior art "disclosed both the use of a continuous vacuum and the creation of that vacuum from only a single vacuum source at the far end of the tube opposite the resin source."  <u>Id.</u>  To

14

overcome the prior art rejection, the patentee amended Claim 1 to include the limitations of the original dependent claims 2-4, explaining that the problem with the prior art was that it required an exceptionally large suction cup when long tube lengths were involved, while placing the cup close to the resin permits the use of a smaller compressor.  Id.  The patentee's original claim 1 covered use of both single and multiple cups.  After amendment, the claim covered only a single cup process.  Id. at 1368.

The Insituform plaintiff accused the defendant's products of infringement by equivalent.  The accused products utilized multiple cups.  The defendant argued that its multiple cup process fell "squarely within the territory surrendered by the narrowing amendment," id., and thus precluded the plaintiff's infringement argument under Festo I.  The Court held that the plaintiff overcame the Festo presumption because the rationale underlying the narrowing amendment was no more than tangentially related to the equivalent in question—the issue was placement of the cups, not the number of cups used.  Insituform, 386 F.3d at 1370-71.  Defendant avers that prosecution history estoppel does not apply here, on the same rationale relied on in Insituform.

Plaintiff argues that the tangential relation exception to the Festo presumption does not apply, because: (1) no reason for the narrowing amendment is clear from the prosecution history; (2) the only discernable

15

rationale for the amendment is directly related to the alleged equivalent; and (3) the switch mechanism for toggling between cable and phone company service is directly related to even Defendant's proffered rationale.

First, Plaintiff argues that Defendant did not specify a reason for rewriting Amendment Claim 2 to include all of the limitations of independent Amendment Claim 1.  See Festo II, 1369-70 (holding that whether the patentee has overcome the presumption of surrender on the ground of tangential relation is determined by the court on the basis of the public record); Biagro W. Sales, Inc. v. Grow More, Inc., 423 F.3d 1296, 1306 (Fed. Cir. 2005) (holding that "since the prosecution history shows no reason for adding [the amendment], [the patentee] cannot claim that the rationale for the amendment was merely tangential.  While, as Plaintiff notes, it is true that Defendant's "Remarks/Arguments" that accompanied the amendment in question provide no indication of Defendant's rationale, the Court may consider the entire prosecution history to discern the rationale for the amendment.

Plaintiff argues, then, that the only discernable rationale for the amendment, based on the entire series of communications between the PTO and Defendant, is that Defendant narrowed the patent to describe with particularity the "means for selective toggling" in light of the prior art.  Plaintiff asserts that the switch mechanism present on its accused

16

products—the alleged equivalent to their jumper cable mechanism—is directly relevant to even Defendant's proposed rationale for the narrowing amendment.  In addition, Plaintiff points out that the Federal Circuit has limited Insituform to circumstances where: (1) the applicant made a clear statement during prosecution explaining the rationale for the amendment; and (2) the alleged equivalent can be categorically distinguished from that rationale.  See Cross Med. Prods. v. Medtronic, 480 F.3d at 1342, 1346-47 (Rader, J., concurring).

Defendant concedes that the reason for the amendment was "to establish the removable electrical connection between the first port and second port."  (Def. Memo. in Opp. at 15.).  Defendant further acknowledges that the jumper cable IS the specific mechanism for making that electrical connection, but then argues that the specific mechanism used to achieve the removable electrical connection is a tangential issue.  In other words, the existence of a removable electrical connection was enough to distinguish the patent from the prior art.  In Defendant's view, the specific nature of the connection is irrelevant.

Defendant's arguments are insufficient to overcome the Festo presumption that he surrendered all "means for selective toggling" when he narrowed Claim 2.  First, neither parties' rationale is "objectively apparent"

17

from the prosecution history, Festo II, 344 F.3d at 1369, and the Court could find for Plaintiff on this basis alone.

Second, even if the controlling case law allowed the Court to attempt to divine a rationale for the amendment from a largely silent record, the result would be the same.  It appears the examiner determined that Claim 1 would be distinguishable from the prior art if it explicitly incorporated the additional limitations of Application Claim 2—a first port, a second port, and a jumper cable.  The amendment distinguishes the Pritchard reference by narrowing the mechanism—the removable electrical connection—used for selective toggling between phone service providers to a device consisting of two ports and a jumper cable.  The jumper cable and its alleged equivalent (the switch) can hardly be considered a tangential matter.

Defendant bears the burden of rebutting the presumption that he has not surrendered the particular equivalent in question.  Festo II, 344 F.3d at 1368 (citing Festo I, 535 U.S. at 741).  Defendant has not met this burden; therefore, the principle of prosecution history estoppel bars Defendant from claiming infringement by equivalency in regard to the twelve accused products.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Partial Summary Judgment of Noninfringement [Docket No. 32] is **GRANTED**.

Dated: November 20, 2007   BY THE COURT:

<u>S / Michael J. Davis</u>
The Honorable Michael J. Davis
United States District Court Judge